**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| JERRY RAY MATTHEWS,<br>Plaintiff,<br>vs.<br>DAVE BEUTER, et al.,<br>Defendants. | No. C24-22-LTS-MAR<br><br>**MEMORANDUM OPINION AND ORDER** |

## *I. INTRODUCTION*

This case is before me on three motions for summary judgment. The first (Doc. 91) was filed by defendants Dave Beuter, Brian Gardner and Jerry Vander Sanden[1] (collectively, the County Defendants) with an accompanying brief (Doc. 91-1), statement of material facts (Doc. 91-2) and appendix (Doc. 91-3). Plaintiff Jerry Ray Matthews has filed a pro se resistance (Doc. 125) with an accompanying response to the County Defendants' statement of material facts (Doc. 125-1), declaration (Doc. 125-2), appendix (Doc. 125-3) and email submission of the filing (Doc. 125-4). The County Defendants have filed a reply (Doc. 128).

The second (Doc. 112) was filed by defendants Michael Andries, Michael Bailey, David Dostal, Jeffrey Herbert and the City of Cedar Rapids (collectively, the City Defendants) with an accompanying brief (Doc. 112-1), statement of material facts (Doc. 112-2) and appendix (Doc. 112-3). Matthews has filed a pro se resistance (Doc. 126)

---

[1] Beuter is identified as the lieutenant commander of the Linn County Sheriff's Department Criminal Division. Vander Sanden is identified as the retired county attorney for Linn County. These two are sued both in their individual and official capacities. *See* Doc. 1-1. Gardner is the sheriff of Linn County. He is sued only in his official capacity. *See* Doc. 8 ¶ 8; Doc. 126-1 ¶ 9 (admitting that his supplemental complaint does not plead individual-capacity claims).

with an accompanying supplemental response to the City Defendants' statement of material facts (Doc. 126-1), declaration (Doc. 126-2), appendix (Doc. 126-3) and email submission of the filing (Doc. 126-4).

The third (Doc. 127) was filed by Matthews with an accompanying brief (Doc. 127-1), statement of material facts (Doc. 127-2), appendix (Doc. 127-3) declaration (Doc. 127-4) and email submission of the filing (Doc. 127-5). The County Defendants and City Defendants have both filed resistances (Docs. 133, 134), and Matthews has filed a reply (Doc. 135). Oral argument is not necessary. *See* LR 7(c).

## *II. SUMMARY JUDGMENT STANDARDS*

Any party may move for summary judgment regarding any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475

U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact means "sufficient evidence support[s] the claimed factual dispute" to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248–49. The moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and, through depositions, affidavits or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). If a party fails to establish the existence of an essential element of a claim or defense when they would bear that burden of proof at trial, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining whether there is a genuine issue of material fact, I view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88. I must further give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the non-moving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996).

## *III. UNDISPUTED FACTS*

Iowa Code Chapter 692A, establishing the Iowa Sex Offender Registry (Registry), regulates certain individuals convicted of sex offenses and requires that they register according to the chapter's procedures. Each covered offender must register with the

county sheriff in the county in which they reside and update the sheriff, in-person, of changes to their living arrangements within five business days. Iowa Code § 692A.104(1)–(2). County sheriffs may mandate more frequent updates for some offenders "if good cause is shown," so long as the frequency of updates are reasonable. *Id.* § 692A.108(2). Failure to comply with the chapter's requirements can result in criminal sanctions. *Id.* § 692A.111. County sheriffs oversee compliance with the registry requirements and are themselves required to comply with the chapter's procedures. *Id.* § 692A.120.

Matthews is a registered sex offender subject to the provisions of the Registry between June and July of 2022. Doc. 125-1 ¶ 1. In June 2022, he reported to the Linn County Sheriff's Office (LCSO) that he was homeless and living in the area. Doc. 91-2 ¶ 9. Because homeless individuals provide a unique challenge for maintaining accurate records of registrants' locations, a long-standing, unwritten practice in Linn County was to require that the offenders report daily to the sheriff's office. *Id.* ¶¶ 5–7; Doc. 91-3 ¶¶ 16–21, 32. The LCSO informed Matthews of his daily reporting obligations, which Matthews claims to have followed for a bit, but by the end of June 2022 Matthews no longer kept up with his check-ins because of "its unreasonable nature." Doc. 8 ¶ 20; *see also* Doc. 91-2 ¶ 10. Throughout the summer of 2022, the LCSO could not verify Matthews' location as was necessary under the Registry. Doc. 91-2 ¶ 11. The office thus drafted a report to the Linn County Attorney's Office, who instituted criminal charges citing Matthews' failure to comply with his daily reporting obligations. *Id.* ¶¶ 13–15; Doc. 125-3 at 62; *see also State v. Matthews*, Linn County Case No. AGCR145917.

Matthews moved to dismiss the case, arguing that the LCSO's daily check-in practice for homeless registrants violated Chapter 692A as well as his due process and equal protection rights. Doc. 91-2 ¶ 19; Doc. 91-3 at 16. The presiding district associate judge agreed, ultimately leading to the case's dismissal. Doc. 91-3 at 3–4. Following the court's order, the LCSO reviewed its daily check-in practice and, on November 22,

2023, modified the practice to require weekly check-ins for homeless registrants. Doc. 91-2 ¶¶ 23–24. The sheriff's office further modified its practice in 2024 to require reporting only within five days of a change of address. *Id.* ¶ 25.

The Cedar Rapids Police Department (CRPD) did not participate in LCSO's daily check-in practice while it was effective. Doc. 126-1 ¶ 11. In February 2024, LCSO notified CRPD that the county no longer had the resources to perform residency checks of registrants, leading to CRPD assuming some of the responsibilities. *Id.* ¶ 14. CRPD thereafter began performing monthly residency checks of registered sex offenders, evenhandedly between homeless and housed registrants.[2]

## *IV. ANALYSIS*

I first consider defendants' motions for summary judgment. Matthews brings his claim under 42 U.S.C. § 1983, which is a vehicle to holding liable any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives another "of any rights, privileges, or immunities secured by the Constitution and laws." He asserts a mix of official- and individual-capacity claims against the defendants. Official-capacity claims against an officer are practically treated as suits against the public entity under who the officer acted as an agent, and require the plaintiff prove that the entity's "policy or custom" played a part in violating their federal rights. *Roberts v. Dillon*, 15 F.3d 113, 115 (8th Cir. 1994) (per curiam); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Individual-capacity claims are suits against the officer in his or her personal capacity for actions the officer undertook under color of state law and imposes personal liability. *Graham*, 473 U.S. at 165.

Matthews contends that LCSO's practice of requiring homeless sex offender registrants to report their location to the sheriff's office every day, in-person, was

[2] Although the complaint alleges that CRPD applies more stringent checks for the homeless, Matthews admits that the record does not support this allegation. *See* Doc. 126-1 ¶¶ 15–16.

discriminatory. The Equal Protection Clause of the 14th Amendment commands that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Whether Matthews defines the class as the homeless or sex offender registrants more broadly, neither is a suspect classification and is therefore evaluated under rational basis review. *See Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1016 (8th Cir. 2006); *Doe v. Nebraska*, 734 F. Supp. 2d 882, 933 (D. Neb. 2010). There is a "strong presumption of validity" for any law or practice evaluated under rational basis review, requiring that Matthews "negative every conceivable basis that might support [the practice]." *Danker v. City of Council Bluffs*, 53 F.4th 420, 423 (8th Cir. 2022). LCSO justifies its now-defunct practice by pointing to its interest in knowing where sex offenders are, *see Doe*, 734 F. Supp. 2d at 930 (collecting cases), and adds that homelessness poses a unique challenge for tracking of and verifying registrants' locations.

Matthews does not contest that LCSO has an interest in knowing the location of sex offenders. In fact, he concedes that the matter "can be a legitimate governmental objective." Doc. 127-1 at 2. Instead, he argues that LCSO's blanket daily check-in practice was not rationally related to that purpose. Clearly, LCSO's practice was not perfectly tailored to its purpose. For example, it required that even those who stayed in one location to report to the sheriff every day, it captured only a small portion of where each registrant would be throughout the day and LCSO never studied the effectiveness of the practice. However, perfect tailoring of the ends and means is not necessary under rational basis review. So long as there is a rational basis for instituting the practice, then there is no equal protection violation. *Brandt ex rel. Brandt v. Griffin*, 147 F.4th 867, 884 (8th Cir. 2025). I can conclude that the contested check-in practice advanced LCSO's interest in keeping apprised of the location of homeless registrants, even if it might have also been overburdensome.

To the extent that Matthews tries to alternatively make out a "class-of-one" equal protection claim by suggesting that he was treated differently than other homeless sex

offender registrants, that challenge fails. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.").[3] He can establish that LCSO enforced the daily check-in requirement against him such that he was prosecuted for failing to comply with it, Doc. 125-3 at 62, but he fails to identify others similarly situated who failed to report daily without being charged. Regardless, the discretion implicit in the county's handling of Matthews' case makes the class-of-one challenge not particularly suited to the situation. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603 (2008) ("There are some forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others . . . ."); *Flowers v. City of Minneapolis*, 558 F.3d 794, 799 (8th Cir. 2009) (applying *Engquist* to an officer's investigative decisions). Matthews' threadbare contention that he was treated more harshly than others fails to create a genuine issue of material fact.

As for Matthews' due process claim, the Due Process Clause guarantees that one will not be deprived of life, liberty or property without due process of law. It has two components. Procedural due process ensures the opportunity for an individual to be meaningfully heard, while substantive due process tests the government's reasons for depriving an individual of a fundamental right. *See Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 816–17 (8th Cir. 2011). "Analysis of either a procedural or substantive

[3] *But see West Virginia v. B.P.J. ex rel. Jackson*, 609 U.S. 958, 985 n.5 ("[A]s-applied challenges are not entertained when courts apply intermediate scrutiny or rational basis review." (citing *Tuan Anh Nguyen v. INS*, 533 U.S. 53, 70 (2001)).

due process claim must begin with an examination of the interest allegedly violated." *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) (en banc).

In Matthews' supplemental complaint, he claims the LCSO's practice violated his due process rights because it "impos[ed] an arbitrary and unreasonable registration requirement lacking a rational basis." Doc. 8 ¶ 26. By focusing on whether LCSO satisfactorily justified its practice, I take Matthews' claim to be based in substantive due process.[4] His later filings focus on the alleged deprivation of his liberty interest, which envelopes more than freedom from physical restraint to guarantee the protection of "certain fundamental rights." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). Fundamental rights can be unenumerated in the Constitution, but to be recognized as fundamental, they must be "'deeply rooted in [our] history and tradition' and . . . essential to our Nation's 'scheme of ordered liberty.'" *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 237 (2022) (quoting *Timbs v. Indiana*, 586 U.S. 146, 149 (2019) (first alteration in original)). It falls on Matthews to "provide a 'careful description' of the asserted fundamental right." *Iowa Farm Sanctuary v. Univ. of Mo. Veterinary Health Ctr.*, 190 F.4th 613, 622 (8th Cir. 2026) (quoting *Glucksberg*, 521 U.S. at 721).

Matthews does not identify his asserted fundamental right or offer any legal support for his position, other than to claim in his own summary judgment motion that LCSO's practice "implicated a protected liberty interest." Doc. 127-1 at 3. That is not the "careful description" necessary for the Court to evaluate whether Matthews has asserted a fundamental right. I therefore characterize his claim as involving a non-fundamental right, which may still be reviewed on due process grounds but under the relaxed standard of rational basis review. *Doe v. Miller*, 405 F.3d 700, 714 (8th Cir. 2005).

[4] Only in Matthews resistance to summary judgment and amended motion for summary judgment does he mention procedural due process. *See* Docs. 125, 127-1. Attempting to add a claim at this late stage without leave of the court is barred by the court's rules and binding precedent. *See Hawse v. Page*, 7 F.4th 685, 691 (8th Cir. 2021).

Matthews contends that LCSO's practice "lack[ed] a rational basis." Doc. 8 ¶ 26. Under that formulation, Matthews has failed to establish a due process violation for the same reasons his equal protection claim fell short. *See Exec. Air Taxi Corp. v. City of Bismark*, 518 F.3d 562, 569 (8th Cir. 2008) ("A rational basis that survives equal protection scrutiny also satisfies substantive due process analysis."). As a result, all defendants are entitled to judgment as a matter of law.[5]

Because Matthews has failed to establish a constitutional violation, I need not address the defendants' additional argument that they are each entitled to qualified immunity as to their individual capacity claims. Similarly, because Matthews' claims fall short, his motion for summary judgment seeking to establish a constitutional violation as a matter of law must be denied.

## ***V. CONCLUSION***

For the reasons set forth herein:

1. The County Defendants' motion (Doc. 91) for summary judgment and the City Defendants' motion (Doc. 112) for summary judgment are **granted in their entirety**. All claims asserted by plaintiff Jerry Ray Matthews are hereby **dismissed**.

2. Matthews' amended motion (Doc. 127) for partial summary judgment is **denied**.

3. Judgment **shall enter** against plaintiff and in favor of the defendants.

4. Pursuant to Federal Rule of Appellate Procedure 4(a)(1), parties wishing to appeal a judgment in a civil case must file a notice of appeal "with the district clerk within 30 days after entry of the judgment or order appealed from." The Clerk's office is directed to send Matthews a copy of Form 1A from the Appendix of Forms from the Federal Rules of Appellate Procedure.

[5] This conclusion is even more apparent with regard to the City Defendants, as Matthews has failed to connect them to the enforcement of LCSO's contested practice.

**IT IS SO ORDERED** this 23rd day of November, 2026.

Leonard T. Strand
United States District Judge